**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SHARI LINDENBAUM**, individually and on behalf of all others similarly situated, | Case No. : 1:17-cv-1863 |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **CVS HEALTH CORPORATION**, a Delaware corporation, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Shari Lindenbaum ("Lindenbaum" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant CVS Health Corporation ("CVS" or "Defendant") to: (1) stop its practice of placing calls using an "automatic telephone dialing system" ("ATDS") and/or using "an artificial or prerecorded voice" to the cellular telephones of consumers nationwide without their prior express consent; (2) stop Defendant from calling consumers who are registered on the National Do Not Call Registry; and (3) obtain redress for all persons injured by its conduct. Plaintiff Lindenbaum, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.      Plaintiff Shari Lindenbaum is a natural person and resident of Cuyahoga County, Ohio.

2.     Defendant CVS is a corporation organized and existing under the laws of the State of Delaware. Defendant systemically and continuously conducts business throughout this District, the State of Ohio, and the United States. Defendant can be served through its registered agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

4.     This Court has personal jurisdiction over Defendant because Defendant maintains a significant presence in this District, solicits significant consumer business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed from, and/or emanated from this District

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON ALLEGATIONS OF FACT

6.     Defendant CVS is an integrated pharmacy health care company, operating more than 9,700 retail locations.[1]

---

[1] *See* Form 10-K (filed Feb. 9, 2017) at 3, available at https://www.sec.gov/Archives/edgar/data/64803/000006480317000006/cvs-20161231x10k.htm

7.    In 2016, Defendant's retail pharmacies filled approximately 1.2 billion prescriptions, accounting for approximately 23.8% of the United States retail pharmacy market.[2]

8.    Defendant's prescription sales are a critical part of their overall business – representing 75% of the revenue taken in by Defendant's retail segment in 2016.[3]

9.    The TCPA prohibits companies, such as CVS, from placing calls using an ATDS and/or using an artificial or prerecorded voice ("prerecorded calls") when making calls to cellular telephones without first obtaining consent.

10.    CVS has violated, and continues to violate, the TCPA and its implementing regulations by placing prerecorded calls to cellular telephone subscribers (a) who had recycled (or reassigned) cellular telephone numbers who have not expressly consented to receiving such calls and/or (b) who have expressly requested not to receive such calls.

11.    In many instances, Defendant's prerecorded calls to consumers' cellular telephones violate the TCPA because: (1) the telephone owner did not consent to receiving the calls (i.e., the consent, if it was obtained at all, was obtained from the prior owner of that telephone number); and/or (2) the current cellular telephone owner has expressly requested not to receive such calls.

12.    As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.... Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the

---

[2] *Id* at 6.
[3] *Id* at 7.

only effective means of protecting telephone consumers from this nuisance and privacy invasion.[4]

13.     Senator Larry Pressler, one of the original drafters of the TCPA, explained the need for the TCPA by observing that "[u]nlike other communications media, the telephone commands our instan[t] attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." 137 Cong. Rec. S18785 (daily ed. Nov. 27, 1991) (statement of Sen. Pressler).

14.     As explained by the Federal Communications Commission ("FCC")[5], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

15.     Indeed the FCC has explicitly noted that any such consent must be given by the party that is actually called, even if the caller intends to call another party:

> [T]he TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone) and that caller best practices can facilitate detection of reassignments before calls. We generally agree with commenters who oppose granting these requests that there are solutions in the marketplace to better inform callers of reassigned wireless numbers; that businesses should institute new or better safeguards to avoid calling reassigned wireless numbers and facing TCPA liability; and that the TCPA requires consent from the actual party who receives a call.[6]

---

[4] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.
[5] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).
[6] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, WC No. 07-135, FCC 15-72, 30 FCC Rcd. 7999-8000 ¶ 72 (July 10, 2015).

4

16.     Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to place prerecorded calls to consumers' cellular telephone numbers.

17.     While some CVS customers may elect to receive prerecorded calls, anyone in the U.S. can receive prerecorded calls from CVS on their cellular telephone even if they do not have any prior relationship with CVS. Thus, as with Plaintiff, CVS places prerecorded calls to current subscribers of recycled cellular telephone numbers (many of whom do not have a relationship with CVS) who have never consented to receiving such prerecorded calls.

18.     For various reasons, cellular telephone subscribers deactivate and relinquish their cellular telephone numbers. Once deactivated, the cellular telephone carrier reassigns the number to another subscriber – a practice known as "recycling." Recycling times (i.e., the time between deactivation and reassignment) vary across carriers, generally ranging from 30 days to six months depending on location and demand. During the recycling period, the cellular telephone number is considered disconnected.

19.     In some instances, the prior owner of a recycled telephone number may have consented to receiving prerecorded calls from CVS. But, even if the prior owner consented, that consent does not transfer to the new recycled cellular telephone number's owner. Ultimately, new owners of recycled cellular telephone numbers are given no choice in receiving, addressing, and paying for CVS's prerecorded calls.

20.     The mobile marketing industry is aware of cellular telephone number recycling and, in particular, the risk associated with placing of prerecorded calls to non-consenting recycled numbers. To help mobile marketers navigate regulatory compliance,

the Mobile Marketing Association ("MMA") [7] publishes specific guidelines based on accepted industry practices for all mobile marketers. In its October 2012 U.S. Consumer Best Practices for Messaging, the MMA recommends that mobile marketers, such as CVS:

> have appropriate and effective systems and processes for managing deactivation and recycled number information. These systems and processes should be designed to ensure that mobile content programs subscribed to by previous holders of a specific phone number do not continue to be delivered or billed to a subsequent holder of that number when it is reassigned. [8]

The MMA further advises mobile marketers to "process deactivation information within three business days of receipt." [9]

21.      In response to the liability risk associated with recycled numbers, numerous commercially available services exist to help companies, such as CVS, that call others using prerecorded voices, identify recycled numbers and non-consenting cellular subscribers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated.

---

[7] The MMA is a global trade organization that issues codes of conduct, best practices, guidelines, rules and instructions for companies engaged in mobile marketing. Its U.S. Consumer Best Practices for Messaging are based on accepted industry practices, common wireless carrier policies and regulatory guidance. With over 800 members, the MMA is the preeminent source for mobile marketing information and expertise.
[8] https://www.ctia.org/docs/default-source/default-document-library/industry-best-practices.pdf
[9] *Id.*

22. Despite the FCC's ruling, the industry guidelines, the commercial availability of programs that help callers filter out recycled numbers, and the obvious lack of consent associated with recycled numbers, CVS fails to take the necessary steps to ensure that its prerecorded calls are placed only to consenting recipients.

23. Rather, in an effort to increase revenue and skirt additional costs, CVS simply treats the new recycled cellular telephone number owner as if he or she were the previous owner. As such, if the previous owner gave consent to receive CVS's prerecorded calls, CVS continues to treat that consent as the consent of the new (unassociated) owner. New owners are then forced to incur the cost and bother of receiving CVS's prerecorded calls. As evidenced by numerous complaints on Internet message boards, [10] CVS often disregards the issue of consent when contacting individuals via prerecorded call to their cellular telephones.

24. CVS knows or should know that its autodialed calls are placed to non-consenting cellular telephone number subscribers. Indeed, CVS has received numerous consumer complaints alerting it to this very fact. Ultimately, CVS is responsible for verifying cellular telephone number ownership and obtaining consent before placing prerecorded calls to cellular telephone subscribers. Even with prior cellular subscriber consent, CVS is liable under the TCPA for placing prerecorded calls to cellular telephone numbers reassigned to new subscribers without the new subscriber's consent. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) (under the TCPA, "[c]onsent to call a given number must come from its current subscriber," not its prior subscriber); *Breslow v. Wells Fargo*, 755 F. 3d 1265, 1267 (11th Cir. 2014) (consent

---

[10] *See e.g.* http://800notes.com/Phone.aspx/1-636-527-6074 ("Wrong number for me, but it's for CVS Pharmacy Automated Dialer to pick up an ordered prescription.")

from "called party" means consent from the person subscribing to the called number at the time the call was made, not the former subscriber); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 03-153, 18 FCC Rcd. 14014 ¶ 123 (July 3, 2003) ("we reject proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers…")

25. Given the multitude of readily available, commercially feasible resources to identify such consumers, CVS had ready means to identify those consumers and to obtain their prior express consent before placing prerecorded calls to their cellular telephones.

26. CVS was, and is, aware that its unsolicited prerecorded calls were, and are, unauthorized as it fails to obtain prior express written consent before placing those calls to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited prerecorded calls.

27. Telemarketers can easily and inexpensively avoid calling consumers who are registered on the National Do Not Call Registry by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers whom opt-out of telemarketing calls.

28. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

8

29.     There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[11] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[12]

30.     By placing the unsolicited prerecorded calls at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such prerecorded calls, a loss of value realized for the monies consumers paid to their carriers for the receipt of such prerecorded calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

31.     In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited prerecorded calling activities and an award of actual or statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

---

[11] *See e.g.* http://www.dncsolution.com/do-not-call.asp;
http://www.donotcallprotection.com/do-not-call-compliance-solutions-1;
http://www.mindwav.com/tcpa_compliance_solution.asp;
[12] https://www.neustar.biz/services/tcpa-compliance

## FACTS SPECIFIC TO PLAINTIFF SHARI LINDENBAUM

32.     Plaintiff Lindenbaum is the registered account owner of a cellular telephone number 216-xxx-6078.

33.     The 216-xxx-6078 number has been registered on the National Do Not Call Registry since December 17, 2004.

34.     Starting on February 20, 2017 at 3:24 pm, Plaintiff received a series of unsolicited, pre-recorded phone calls on the 216-xxx-6078 cellular telephone number from 216-371-1234.

35.     Plaintiff received prerecorded phone calls on the 216-xxx-6078 cellular telephone number from Defendant at the following dates and times:

- February 20, 2017 3:24 pm

- February 20, 2017 4:38 pm

- February 20, 2017 4:56 pm

- March 19, 2017 10:02 am

- March 19, 2017 5:02 pm

- March 21, 2017 12:01 pm

36.     All of the above referenced prerecorded phone calls displayed 216-371-1234 on the caller-ID of Plaintiff's cellular phone. That number is the number for one of Defendant's retail pharmacies located in Shaker Heights, Ohio, in this District.

37.     The prerecorded calls at issue were unquestionably placed by Defendant, as they were prescription reminders and the caller-ID displayed a number assigned to and used by Defendant.

38.     Plaintiff has never provided her prior express written consent to Defendant to receive prerecorded calls to her on the 216-xxx-6078 number.

39.     Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

40.     By placing the prerecorded calls as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the prerecorded calls disturbed Plaintiff's use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

41.     In order to redress these injuries, Plaintiff, on behalf of herself and the other members of the Classes, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls to cellular telephones.

42.     On behalf of the Classes, Plaintiff seeks an injunction requiring CVS to cease all unsolicited pre-recorded calling activities, and to further cease placing calls to phone numbers listed on the National Do Not Call Registry, and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

43.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure

23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated and seeks

certification of the following two Classes:

> **<u>Robocall No Consent Recycled Number Class</u>:** All persons in the
> United States who from a date four years prior to the filing of the initial
> complaint to the present: (1) Defendant (or a third person acting on behalf
> of Defendant) called; (2) on the person's cellular telephone number using
> an artificial or prerecorded voice; (3) where such number had been
> recycled or reassigned; and (4) for whom Defendant claims it obtained
> prior express consent in the same manner as Defendant claims it obtained
> prior express consent to call the Plaintiff.

> **<u>Do Not Call Registry Class</u>:** All persons in the United States who: (1)
> Defendant (or a third person acting on behalf of Defendant) called more
> than one time on his/her cellphone; (2) within any 12-month period (3)
> where the cellphone number had been listed on the National Do Not Call
> Registry for at least thirty days; (4) for the purpose of selling Defendant's
> products and services; and (5) for whom Defendant claims it obtained
> prior express consent in the same manner as Defendant claims it obtained
> prior express consent to call the Plaintiff.

44.     The following people are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant,

Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the

Defendant or their parents have a controlling interest and its current or former employees,

officers and directors; (3) persons who properly execute and file a timely request for

exclusion from the Class; (4) persons whose claims in this matter have been finally

adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's

counsel; and (6) the legal representatives, successors, and assigns of any such excluded

persons. Plaintiff anticipates the need to amend the definitions of the Classes following

class discovery, including discovery revealing the manner by which Defendant claims

they obtained prior express consent to place autodialed and/or pre-recorded calls to the Plaintiff.

45. **Numerosity**: The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed unsolicited calls to hundreds or thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through Defendant's records.

46. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiff is a member of the Classes defined herein, and if Plaintiff is able to recover for the claims set forth in this Complaint, then the other members of the Classes will have a right to recover as well.

47. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiff has no conflicts with, or interests antagonistic to, those of the Classes, and Defendant has no defenses unique to Plaintiff.

48. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

a)  Whether Defendant's conduct constitutes a violation of the TCPA;

13

b) Whether Defendant utilized an artificial or prerecorded voice to place calls to members of the Classes;

c) Whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

d) Whether Defendant obtained prior express consent to contact any class members;

e) Whether Defendant's calls constitute telemarketing or were dual purpose messages, and

f) To the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

49. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

14

50.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Robocall No Consent Recycled Number Class)**

51.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

52.     Defendant and/or it's agent(s) placed unsolicited calls to cellular telephone numbers belonging to Plaintiff and the other members of the Robocall No Consent Recycled Number Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

53.     These calls were made *en masse* and without the prior express written or oral consent of the Plaintiff and the other members of the Robocall No Consent Recycled Number Class to receive such calls.

54.     These calls, including those to Plaintiff, utilized an artificial or prerecorded voice.

55.     To the extent prior written express consent was required, Defendant failed to obtain prior written express consent that disclosed to the consumer that agreeing to receive pre-recorded calls was not a condition of purchase or use of any goods or service

15

or that the consumer was agreeing to receive calls with the use of an ATDS or similar technology. No oral consent was provided either.

56.     To the extent Defendant's agent placed the calls at issue, Defendant's agent acted with actual or apparent authority and/or in accordance with a contract between Defendant and its agent. Defendant's agent acted under Defendant's control and for Defendant's benefit and/or with Defendant's knowledge and approval. Defendant controlled its agent and knew about, and received the benefits of, the agent's calling activities. Defendant ratified the agent's conduct with respect to the placing of such calls.

57.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Robocall No Consent Recycled Number Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

58.     In the event that the Court determines that Defendant's conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall No Consent Recycled Number Class.

**<u>SECOND CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do No Call Registry Class)**

59.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

60.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action

based on a violation of said regulations. Those regulations were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

61.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

62.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

63.     47 C.F.R. § 64.1200(d) further provides that:

[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

64.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to cellular telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive

18

telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

65.    Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel involved in any aspect of telemarketing regarding any do not call list, and by failing to record and honor do not call requests.

66.    Defendant placed more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such pre-recorded calls. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive pre-recorded calls from Defendant, and/or Defendant does not have a current record of consent to place pre-recorded calls to them.

67.    Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

68.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one pre-recorded call in a 12-month period made by, or on behalf of, Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each

19

entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. §
64.1200.

69.     To the extent Defendant's misconduct is determined to be willfull and
knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of
statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Shari Lindenbaum, individually and on behalf of the
Classes, prays for the following relief:

1.      An order certifying this case as a class action on behalf of the Classes as
defined above; appointing Plaintiff Lindenbaum as the representative of the Classes and
appointing her attorneys as Class Counsel;

2.      An award of actual and statutory damages to be paid into a common fund
for the benefit of Plaintiff and the Classes;

3.      An order declaring that Defendant's actions, as set out above, violate the
TCPA;

4.      A declaratory judgment that Defendant's telephone calling equipment
constitutes an automatic telephone dialing system under the TCPA;

5.      An order requiring Defendant to disgorge any ill-gotten funds acquired as
a result of its unlawful telephone calling practices;

6.      An order requiring Defendant to identify any third-party involved in the
prerecorded calling as set out above, as well as the terms of any contract or compensation
arrangement it has with such third parties;

7. An injunction requiring Defendant to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Classes;

8. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

10. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

11. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

12. An award to an appropriate *cy pres* recipient of all monies remaining in the common fund due to uncashed checks; and

13. Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**SHARI LINDENBAUM**, individually and
on behalf of a Class of similarly situated
individuals

Dated: September 5, 2017

By:   /s/Adam T. Savett
One of Plaintiff's Attorneys

Adam T. Savett (VA73387)
adam@savettlaw.com
Savett Law Offices LLC
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

Attorneys for Plaintiff and the Putative
Classes