### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| SHARI LINDENBAUM, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:17-cv-1863-JG |
| v. | |
| CVS HEALTH CORPORATION, a Delaware corporation, | Judge:  James S. Gwin |
| *Defendant.* | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CVS HEALTH CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, TO STAY THE ACTION

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................... 1

II.  PLAINTIFF'S ALLEGATIONS ................................................................ 2

III. LEGAL STANDARD ON MOTION FOR JUDGMENT ON THE PLEADINGS ............... 3

IV.  THIS COURT DOES NOT HAVE PERSONAL JURISDICTION ....................................... 3

   A.  Plaintiff Fails to Make a *Prima Facie* Showing of Personal Jurisdiction Pursuant to Ohio's Long-Arm Statute ........................................................................ 4

   B.  Exercising Personal Jurisdiction Does Not Comport With Due Process ........................... 5

      i.   Plaintiff Fails to Establish General Jurisdiction ........................................... 6

      ii.  Plaintiff Fails to Establish Specific Jurisdiction ........................................ 7

            a. Plaintiff Fails to Establish Purposeful Availment………………………………7
            b. The Causes of Action Do Not Arise From Activities in Ohio……………… 9
            c. Maintenance of the Suit in Ohio Will Offend Traditional Notions of Fair Play and Substantial Justice…………………………………………………………9

V.   THE COMPLAINT FAILS TO ALLEGE ANY VIOLATION OF THE TCPA ................. 10

   A.  The Calls At Issue Are Not Actionable Because The TCPA Exempts Calls Made for Emergency Purposes ....................................................................... 10

   B.  Plaintiff's Second Cause of Action for Purported Violations of 47 U.S.C. § 227(c)(5) Fails to Allege a Claim Under the TCPA ...................................................... 12

      i.   Plaintiff Fails to Allege That She Received Calls as a "Residential Telephone Subscriber" ...................................................................... 12

      ii.  The Alleged Calls Were Not Telemarketing or Solicitations ................................. 13

      iii. Plaintiff Does Not Allege that She Registered Her Telephone Number on the Do-Not Call List ...................................................................... 14

VI.  IN THE ALTERNATIVE, THE CASE SHOULD BE STAYED ..................................... 15

   A.  The FCC's Declaratory Ruling and *ACA Int'l* D.C. Circuit Appeal ............................. 15

   B.  Other Courts Have Granted Stays In Similar Circumstances ................................... 17

   C.  The Relevant Factors All Weigh in Favor of Granting a Stay Here .............................. 18

      i.   *ACA* May be Dispositive ................................................................ 18

      ii.  A Stay Will Promote Judicial Economy and Public Welfare .................................. 19

      iii. Plaintiff Will Not be Prejudiced by a Stay ................................................ 19

VII. CONCLUSION ...................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Int'l v. Federal Communications Comm'n*,
No. 15-1211 (D.C. Cir. 2015) ........................................................................... *passim*

*Bennett Regulator Guards, Inc. v. MRC Global, Inc.*,
Case No. 4:12CV1040, 2013 U.S. Dist. LEXIS 93553 (N.D. Ohio July 3,
2013) ...........................................................................................................................6

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ............................................................................5, 6, 7

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) ......................................................................................3

*BNSF Ry. v. Tyrrell*,
137 S. Ct. 1549 (2017) ................................................................................................7

*Bridgeport Music, Inc. v. Still N The Water Pub.*,
327 F.3d 472 (6th Cir. 2003) ......................................................................................4

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....................................................................................................7

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) ..................................................................................3, 4

*In re Consumers Power Co. Sec. Litigation*,
105 F.R.D. 583 (E.D. Mich. 1985) .............................................................................1

*Cunningham v. Local Lighthouse Corp.*,
No. 3:16-cv-02284, 2017 U.S. Dist. LEXIS 148396 (M.D. Tenn. August 7,
2017) ......................................................................................................................8, 13

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ..................................................................................................7

*Delozier v. Nationstar Mortg., LLC*,
No. 3-16-1433, 2016 U.S. Dist. LEXIS 183823 (M.D. Tenn. October 27,
2016) ..........................................................................................................................17

*Dukes v. Mid-Eastern Ath. Conf.*,
213 F. Supp. 3d 878 (W.D. Ky. Sept. 30, 2016)....................................................5, 6

*Eubank, et al. v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ................................................................................1

*Federal Trade Comm'n v. E.M.A. Nationwide, Inc.*,
  767 F.3d 611 (6th Cir. 2014) ..............................................................................15

*Fontes v. Time Warner Cable, Inc.*,
  No. CV14-2060-CAS, 2015 U.S. Dist. LEXIS 169580 (C.D. Cal. Dec. 17,
  2015) ...............................................................................................................17, 18

*Gill v. Convergent Outsourcing, Inc.*,
  No. 2:16-cv-01035, 2017 U.S. Dist. LEXIS 92286 (S.D. Ohio June 15, 2017) ....................19

*Health One Med. Ctr. v. Bristol-Myers Squibb Co.*,
  No. 16-cv-13815, 2017 U.S. Dist. LEXIS 110285 (E.D. Mich. July 17, 2017) ......................9

*Intera Corp. v. Henderson*,
  428 F.3d 605 (6th Cir. 2005) ..............................................................................10

*Jackson v. Safeway, Inc.*,
  No. 15-cv-04419-JSC, 2016 U.S. Dist. LEXIS 140763 (N.D. Cal. Oct. 11,
  2016) ...............................................................................................................14

*Jones v. Credit Acceptance Corp.*,
  No. 15-13165, 2016 U.S. Dist. LEXIS 174152 (E.D. Mich. Oct. 31, 2016) ..........................17

*Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*,
  53 Ohio St. 3d 73 (Ohio S. Ct. 1990) ...................................................................5

*Kern v. VIP Travel Servs.*,
  No. 1:16-CV-8, 2017 U.S. Dist. LEXIS 71139 (W.D. Mich. May 10, 2017) ..........................8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ..........................................................................................15

*Lee v. LoanDepot.com, LLC*,
  No. 14-CV-01084-EFM, 2016 U.S. Dist. LEXIS 110100 (D. Kan. Aug. 17,
  2016) ...............................................................................................................13

*Leyse v. Clear Channel Broad., Inc.*,
  697 F.3d 360 (6th Cir. 2012) ..............................................................................13

*Livingston v. Redwine*,
  No. 1:06cv337, 2007 U.S. Dist. LEXIS 68673 (S.D. Ohio Sep. 17, 2007) ..........................4

*Lucas Alex Ambrezewicz v. Leadpoint, Inc.*,
  No. 5:16-cv-02331-JGB-KK (C.D. Cal. May 8, 2017) ...............................................17

iii

*Maksymowski v. Navient Solutions, Inc.*,
No. 15-14368, 2017 U.S. Dist. LEXIS 4406 (E.D. Mich. Jan. 12, 2017) ........................17, 18

*Matrix Essentials v. Harmon Stores*,
205 F. Supp. 2d 779 (N.D. Ohio 2001)...............................................................................5

*In re Matter of Tel. Consumer Prot. Act of*
1991, 7 F.C.C. Rcd. 2736 (1992) .........................................................................................11

*Mayrides v. Del. County*,
666 F. Supp. 2d 861 (S.D. Ohio 2009) ...............................................................................3

*Michael v. Ghee*,
325 F. Supp. 2d 829 (N.D. Ohio 2004)...............................................................................15

*In re Microsoft Corp. Antitrust Litig.*,
214 F.R.D. 371 (D. Md. 2003)...............................................................................................1

*Morrison v. Taurus Int'l Co.*,
No. 3:11-cv-322, 2012 U.S. Dist. LEXIS 162036 (S.D. Ohio Nov. 13, 2012) ........................4

*Neogen Corp. v. Neo Gen Screening, Inc.*,
282 F.3d 883 (6th Cir. 2002) ...............................................................................................7

*Ricketts v. Consumers Energy Co.*,
No. 16-cv-13208, 2017 U.S. Dist. LEXIS 82501 (E.D. Mich. May 31, 2017) .......................17

*Roberts v. Medco Health Sols., Inc.*,
No. 4:15 CV 1368 CDP, 2016 U.S. Dist. LEXIS 97177 (E.D. Mo. July 26,
2016) ..................................................................................................................................11, 12

*S. Mach. Co. v. Mohasco Indus., Inc.*,
401 F.2d 374 (6th Cir. 1968) ...............................................................................................7, 9

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir. 1991) .............................................................................................3

*Tilley v. Ally Fin., Inc.*,
No. 16-cv-14056, 2017 U.S. Dist. LEXIS 63022 (E.D. Mich. April 26, 2017) ......................17

*Turoff v. May Co.*,
531 F.2d 1357 (6th Cir. 1976) .............................................................................................1, 11

*Youn v. Track, Inc.*,
324 F.3d 409 (6th Cir. 2003) ...............................................................................................6, 9

iv

**Statutes**

47 U.S.C. § 227(a)(1)............................................................................................17

47 U.S.C. § 227(a)(4)............................................................................................14

47 U.S.C. § 227(b)(1) ...............................................................................10, 12, 19

47 U.S.C. § 227(b)(2)............................................................................................11

Ohio Revised Code Section 2307.382(A).................................................................4

47 C.F.R. § 64.1200(c)................................................................................ *passim*

47 C.F.R. § 64.1200(d) ............................................................................... *passim*

47 C.F.R. § 64.1200(f)...............................................................................11, 13, 14

## BRIEF STATEMENT OF ISSUES TO BE DECIDED

1) Does this Court have personal jurisdiction over CVS Health Corporation?

2) Does the "emergency purposes" exception of the TCPA warrant dismissal of Plaintiff's TCPA claims because the alleged calls were prescription reminders?

3) Should Plaintiff's second TCPA claim premised on alleged violations of 47 C.F.R. §§ 64.1200(c)(2) and (d) be dismissed because Plaintiff failed to allege she is a residential telephone subscriber?

4) Should Plaintiff's second TCPA claim premised on alleged violations of 47 C.F.R. §§ 64.1200(c)(2) and (d) be dismissed because the alleged calls were not telemarketing or solicitations?

5) Should Plaintiff's second TCPA claim premised on alleged violations of 47 C.F.R. §§ 64.1200(c)(2) be dismissed because Plaintiff failed to allege that she registered her telephone number on the National Do-Not-Call registry?

6) Should the case be stayed pending resolution of independent proceedings in the D.C. Circuit that raise related legal issues?

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff and her attorney – who is her brother-in-law – filed this putative class action against CVS Health Corporation ("CVS Health") asserting two causes of action for alleged violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") arising out of nonactionable prescription reminders.[1]  Complaint, ¶ 10.  The Complaint names CVS Health, an improper party for whom personal jurisdiction does not exist in this jurisdiction, and is fatally defective because: (1) as a matter of law, the calls fall within the "emergency purposes" exception of the TCPA; (2) Plaintiff has not alleged she is a "residential telephone subscriber" as required under 47 C.F.R. § 64.1200(c)(2) and (d); (3) the alleged calls were not "telemarketing" or "telephone solicitations" as required under 47 C.F.R. § 64.1200(c)(2) and (d); and (4) Plaintiff has not alleged that *she* registered her telephone number on the National Do-Not-Call Registry in accordance with 47 C.F.R. § 64.1200(c)(2).  Consequently, the Complaint must be dismissed.

Though CVS Health respectfully urges the Court to dismiss this case for lack of personal jurisdiction (or alternatively on the merits), if the Court is not inclined to dismiss, CVS Health requests a stay until the U.S. Court of Appeals for the D.C. Circuit issues a decision in *ACA Int'l v. Federal Communications Comm'n*, No. 15-1211 (D.C. Cir. 2015).  Petitioners there are challenging a ruling by the FCC regarding (1) the definition of a "called party" and whether calls

---

[1] As CVS Health advised Plaintiff's counsel, filing a class action with his sister-in-law as the named Plaintiff is improper.  *See e.g. Turoff v. May Co.*, 531 F.2d 1357, 1360 (6th Cir. 1976) (plaintiffs found to be inadequate class representatives where "[o]f the four named plaintiffs, three are attorneys with the law firm of counsel and the fourth is the wife of one of them"); *Eubank, et al. v. Pella Corp*., 753 F.3d 718, 723-24 (7th Cir. 2014) (where lead class counsel was the son-in-law of the lead class representative, that created "a grave conflict of interest; for the larger the fee award to class counsel, the better off Saltzman's daughter and son-in-law would be financially"); *In re Consumers Power Co. Sec. Litigation*, 105 F.R.D. 583, 603 (E.D. Mich. 1985) (citing *Turoff*, requiring counsel to withdraw from group of plaintiff's lawyers where plaintiff was his father-in-law, and holding: "There must be nothing . . . that will cast doubt on the representative's ability to protect the interest of the class.  It is for this reason the court indicates that the presence of a relative attorney might be misunderstood by members of the class and will not be approved."); *In re Microsoft Corp. Antitrust Litig.*, 214 F.R.D. 371, 374-75 (D. Md. 2003) ("Henning is the sister-in-law of one of the attorneys for the plaintiffs . . . . Henning is merely a pawn, and I find that she would not represent the class fairly and adequately.").

1

to reassigned numbers are actionable and (2) the definition of an "automatic telephone dialing system" ("ATDS") under the TCPA.  Plaintiff here has placed both issues at the center of this case.

## II.    PLAINTIFF'S ALLEGATIONS

The present dispute arises out of alleged prescription reminders to a cellular telephone number purportedly belonging to Plaintiff in February and March 2017.  Complaint, ¶¶ 32-37. Plaintiff contends she did not provide consent as her phone number is a recycled (or reassigned) number.  *Id.* ¶¶ 10, 17-19, 24, 35, 38.  Plaintiff characterizes these calls as initiated by an ATDS and/or using an artificial or prerecorded voice.  *Id.* ¶ 9.  Plaintiff alleges that calls "were unquestionably placed by Defendant as they were prescription reminders…." *Id.* ¶ 37.  Though Plaintiff claims the calls were unwanted, she never alleges that she asked for the calls to stop.

Plaintiff, moreover, acknowledges that CVS Health is a Delaware corporation with a registered agent for service of process in Delaware.  *Id.* ¶ 2.  She generally contends, without any specific factual support, that this Court has personal jurisdiction over CVS Health because it "maintains a significant presence in this District, solicits significant consumer business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed from, and/or emanated from this District."  *Id.* ¶ 4.[2]  The bare allegations are contradicted by the facts: CVS Health is a holding company whose primary purposes are to issue stock that is traded on the New York Stock Exchange and to file reports with the Securities and Exchange Commission ("SEC"). Declaration of Thomas Moffatt ("Moffatt Decl."), at ¶ 4.  Its principal place of business is in Rhode Island, it does not have operations unrelated to its status as a holding company, and it

---

[2] In its Answer (Dkt. # 8), CVS Health denied Plaintiff's personal jurisdiction allegations (*see* ¶ 4) and raised Lack of Personal Jurisdiction as an affirmative defense (*see* Pg. 9).

does not have offices or facilities in Ohio. *Id.* ¶¶ 4-5. Nor is it qualified as a foreign corporation under the laws of the State of Ohio, it does not have a registered agent for service of process in Ohio, it has no direct employees in Ohio, and it does not directly operate any retail pharmacy locations. *Id.* ¶¶ 5-6.

## III.    LEGAL STANDARD ON MOTION FOR JUDGMENT ON THE PLEADINGS

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss. *Mayrides v. Del. County*, 666 F. Supp. 2d 861, 865 (S.D. Ohio 2009); *see, e.g.*, *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). A motion under Rule 12(c) may be granted where there is an absence of law to support a claim or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Id.* at 866. When personal jurisdiction is challenged through a Rule 12 motion, the Court may properly consider the parties' declarations. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

## IV.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION

As an initial matter, the case should be dismissed because personal jurisdiction, which is Plaintiff's burden, does not exist. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). "Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.' . . . 'Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the

3

forum state.'"  *Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 477 (6th Cir.

2003) (quoting *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002) (citation omitted)).  The Court

engages in a two-part analysis to determine (1) if personal jurisdiction is present under Ohio's

long-arm statute and, if so, (2) whether personal jurisdiction comports with due process.

*Livingston v. Redwine*, No. 1:06cv337, 2007 U.S. Dist. LEXIS 68673, at *13 (S.D. Ohio Sep. 17,

2007).

### A.    Plaintiff Fails to Make a *Prima Facie* Showing of Personal Jurisdiction Pursuant to Ohio's Long-Arm Statute

Under Section 2307.382(A) of the Ohio Revised Code, the Court may exercise personal

jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the

person:

> (1)    Transacting any business in this state;. . .
> (3)    Causing tortious injury by an act or omission in this state;
> (4)    Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;. . .
> (6)    Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state . . . .

Ohio Rev. Code Ann. § 2307.382(A) (LexisNexis 2017).

Plaintiff must provide **specific facts** to make a *prima facie* case of personal jurisdiction.

*CompuServe*, 89 F.3d at 1262; *Morrison v. Taurus Int'l Co.*, No. 3:11-cv-322, 2012 U.S. Dist.

LEXIS 162036 (S.D. Ohio Nov. 13, 2012) (case dismissed for lack of personal jurisdiction

where plaintiff relied on "conclusory allegations").  Ohio's long arm statute is inapplicable

because Plaintiff fails to allege specific facts as to how CVS Health (a holding company) has

transacted any business in Ohio or why it is responsible for the alleged calls.  *See* Complaint, ¶¶

2, 4 (generally alleging that CVS Health is a corporation organized and existing under the laws of

4

the State of Delaware and "Defendant systematically and continuously conducts business throughout this District").[3]  As alleged, CVS Health is a Delaware corporation with a registered agent for service of process in Delaware.  Complaint, ¶ 2.  Plaintiff's generalized allegations, moreover, are contradicted by the facts: CVS Health is a holding company with its principal place of business in Rhode Island, its primary purpose is to issue stock and file reports with the SEC, it does not have operations unrelated to its status as a holding company, it does not have offices or facilities in Ohio, it is not qualified as a foreign corporation under the laws of the State of Ohio, it does not have a registered agent for service of process in Ohio, it has no direct employees in Ohio, and it does not directly operate any retail pharmacy locations and does not make or cause prescription phone call reminders to be made.[4]  Moffatt Decl., ¶¶ 4-6.  Accordingly, personal jurisdiction does not exist under Ohio's long arm statute.

### B.      Exercising Personal Jurisdiction Does Not Comport With Due Process

Even if Ohio's long-arm statute applied, Plaintiff cannot establish that personal jurisdiction over CVS Health comports with due process.  "Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state."  *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002); *Dukes v. Mid-Eastern Ath. Conf.*, 213 F. Supp. 3d 878, 882 (W.D. Ky. Sept. 30, 2016) (citing *Bird* and noting that "[t]he

---

[3] Courts must determine whether an out-of-state defendant has transacted business in Ohio on a case-by-case basis "with only the bare language of Ohio's long arm statute for guidance."  *Matrix Essentials v. Harmon Stores*, 205 F. Supp. 2d 779, 786 (N.D. Ohio 2001).    On the face of the Complaint, CVS Health has not "transacted business" or engaged in "dealings" in Ohio within the meaning of Ohio's long arm statute.  *See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (Ohio S. Ct. 1990) (defining "transact" under Ohio's long arm statute as: "to *prosecute negotiations; to carry on business; to have dealings*. . .").

[4] Additionally, though Plaintiff alleges calls that came from a pharmacy in Shaker Heights, Ohio, Plaintiff does not explain why this Court should find that calls from a pharmacy create personal jurisdiction over CVS Health Corporation, which does not directly operate any pharmacy locations.

5

*Due Process Clause* permits the court to exercise general or specific jurisdiction, depending on the type of contacts that the defendant has with the forum state").

"General jurisdiction is proper only where a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird*, 289 F.3d at 873. Specific jurisdiction is satisfied only if: (1) the defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action arises from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.*; *Youn v. Track, Inc.,* 324 F.3d 409, 418 (6th Cir. 2003), *citing S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

### i. Plaintiff Fails to Establish General Jurisdiction

Plaintiff fails to establish that general jurisdiction exists over CVS Health. Plaintiff relies on conclusory allegations and claims that CVS Health "systematically and continuously conducts business throughout this District." Complaint, ¶ 2.[5] Without more, Plaintiff's allegations fail to establish general jurisdiction. *See e.g. Dukes v. Mid-Eastern Ath. Conf.*, 213 F. Supp. 3d 878, 882 (W.D. Ky. 2016) (motion for judgment on the pleadings granted where plaintiff "makes the conclusory statement that 'Barbee has, for himself and for the benefit of the MEAC, transacted business with [her] within the geographic boundaries of Jefferson County [and] provides no factual allegations that would support this statement"); *Bennett Regulator Guards, Inc. v. MRC Global,*

---

[5] Plaintiff also alleges the following conclusions: that CVS Health "maintains a significant presence in this District, solicits significant consumer business in this District, has entered into business contracts in this District and a significant portion of the unlawful conduct alleged in this Complaint occurred, was directed from, and/or emanated from this District." Complaint, ¶ 4.

6

*Inc.*, Case No. 4:12CV1040, 2013 U.S. Dist. LEXIS 93553, *8 (N.D. Ohio July 3, 2013) ("Bennett's bare conclusory allegation that AGLC conducts business in this state is insufficient to support the exercise of personal jurisdiction over AGLC.").  And regardless of what Plaintiff alleges, Plaintiff cannot establish general jurisdiction because CVS Health is a holding company, is a Delaware corporation, has its principal place of business in Rhode Island, and has no offices or facilities in Ohio.  Moffatt Decl., ¶¶ 4-5.  *See e.g. BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017) (noting that the "'paradigm' forums in which a corporate defendant is 'at home,' are the corporation's place of incorporation and its principal place of business" and even "a corporation that operates in many places can scarcely be deemed at home in all of them") (internal citations and brackets omitted)*; Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 (2014) (error to conclude that Daimler, even with contacts of a subsidiary attributed to it, "was at home in California" where it was not incorporated in California and did not have its principal place of business there); *Bird*, 289 F.3d at 873-74 (no general jurisdiction where plaintiff failed to allege that defendant had an office in Ohio, was licensed to do business there, or directed business operations from Ohio).

### ii.    Plaintiff Fails to Establish Specific Jurisdiction

#### a.    Plaintiff Fails to Establish Purposeful Availment

Plaintiff must show CVS Health purposefully availed itself of "the privilege of acting in the forum state or causing a consequence in the forum state."  *S. Mach.*, 401 F.2d at 381.  That is, whether the absolute amount of business conducted by a defendant in a state represents something more than "random, fortuitous, or attenuated contacts" with the state, such that the defendant should reasonably anticipate being haled into court there.  *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 889-90 (6th Cir. 2002); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

There are no specific allegations that CVS Health plays an active role in directing any business transactions, let alone a pharmacy's alleged phone calls, to Ohio.  Although Plaintiff broadly alleges that "[t]he prerecorded calls at issue were unquestionably placed by Defendant" (Complaint, ¶ 37), Plaintiff does not make these allegations with the "reasonable particularity" required to support a *prima facie* showing of personal jurisdiction.  *Cunningham v. Local Lighthouse Corp.*, No. 3:16-cv-02284, 2017 U.S. Dist. LEXIS 148396, at *10-11 (M.D. Tenn. August 7, 2017) (citing *Neogen Corp.*, 282 F.3d at 887).  Indeed, Plaintiff does not plead CVS Health's personal involvement in initiating these alleged calls on behalf of the retail pharmacy in Ohio.  Plaintiff has only asserted "conclusory, self-serving, and woefully insufficient" jurisdictional allegations which cannot support this Court's exercising jurisdiction over CVS Health.  *See e.g., Cunningham*, 2017 U.S. Dist. LEXIS 148396, at *11; Complaint, ¶¶ 2, 4, 5.

Nor has Plaintiff alleged that CVS Health purposefully established minimum contacts in Ohio.  Here, Plaintiff only broadly alleges that CVS Health "conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District."  Complaint, ¶ 5.  However, there is no allegation in the Complaint explaining why the entity being sued is responsible for the phone calls at issue.  And regardless of what Plaintiff tries to allege, the entity that has been sued is a holding company that does not direct or conduct business in Ohio, does not directly operate any retail pharmacy locations and did not make any phone calls regarding prescription drugs (or cause the alleged calls to be made).  Moffatt Decl., ¶¶ 4-6; *see Kern v. VIP Travel Servs.*, No. 1:16-CV-8, 2017 U.S. Dist. LEXIS 71139, at *13-14 (W.D. Mich. May 10, 2017) (dismissing defendant on personal jurisdiction grounds in TCPA action because a third party, not defendant, placed the

telephone calls giving rise to the lawsuit, and defendant's single email confirmation in response did not amount to "purposeful availment").

        b.     The Causes of Action Do Not Arise From Activities In Ohio

The second prong of the analysis requires that Plaintiff's causes of action "arise from" the defendant's contacts with the forum state. *S. Mach.*, 401 F.2d at 381.  "Arise from" has been interpreted to mean "related to" or "connected with" the defendant's contacts with the forum state. *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003).  Again, there are no specific allegations as to CVS Health's business activities or contacts within Ohio (or even in this District) sufficient to establish that the alleged TCPA violations had anything to do with business conducted by CVS Health Corporation in Ohio.  And because the entity that was sued is a holding company that issues stock, has no offices or facilities in Ohio, and is not qualified as a foreign corporation under the laws of the State of Ohio, Plaintiff's causes of action necessarily cannot "arise from" nonexistent contacts with the forum state.  Moffatt Decl, ¶¶ 4-6; *See Health One Med. Ctr. v. Bristol-Myers Squibb Co.*, No. 16-cv-13815, 2017 U.S. Dist. LEXIS 110285, at *12-16 (E.D. Mich. July 17, 2017) (dismissing plaintiff's TCPA complaint for lack of personal jurisdiction where claims did not arise out of defendant's business transactions or contacts in the forum state).

        c.     Maintenance of the Suit in Ohio Will Offend Traditional Notions
                 of Fair Play and Substantial Justice

Finally, the exercise of jurisdiction over CVS Health must be reasonable in light of its actions. *S. Mach.*, 401 F.2d at 381.  In determining whether the exercise of jurisdiction is reasonable, a Court must consider several factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states'

interest in securing the most efficient resolution of the controversy.  *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).  CVS Health would be substantially burdened by litigating a case in which it has been named as an improper party; not only has CVS Health been named incorrectly, it is also based in Rhode Island, adding to its burden.  *See* Moffatt Decl., ¶ 5 (CVS's principal place of business is in the State of Rhode Island and it has no offices or facilities in the State of Ohio).  Consequently, Ohio has no interest in litigation involving a wrongly named defendant with no contacts to the state; moreover, it is unclear from Plaintiff's allegations whether she was even in Ohio or this District when she allegedly received calls.  Assuming CVS Health is the correct defendant – and it is not – its home state would have an interest in hearing this litigation.

## V.    THE COMPLAINT FAILS TO ALLEGE ANY VIOLATION OF THE TCPA

### A.    The Calls At Issue Are Not Actionable Because The TCPA Exempts Calls Made for Emergency Purposes

While the TCPA regulates certain phone calls, 47 U.S.C. § 227(b)(1), under which Plaintiff purports to bring her first cause of action, also includes a carve out for calls made for emergency purposes: "It shall be unlawful . . . to make any call (*other than a call made for emergency purposes* or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . ."  47 U.S.C. § 227(b)(1)(A) (emphasis added); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 65 Communications Reg. (P&F) 226 ¶ 3 (F.C.C. Aug. 4, 2016) ("The TCPA expressly exempts from these prohibitions calls made for 'emergency purposes.'").  Thus, if a call falls within the TCPA's "emergency purposes" exception, consent is not required.  The Federal Communications Commission ("FCC"), moreover, has been charged with implementing the TCPA's regulations, and has the authority to exempt certain calls from the

TCPA's prohibitions.[6]  Accordingly, the FCC has defined "emergency purposes" to broadly mean "calls made necessary in any situation affecting the health and safety of consumers."  47 C.F.R. § 64.1200(f)(4).[7]  Calls concerning a consumer's prescriptions fall within the plain language of the emergency purposes exception.  Indeed, in a similar case involving a "reassigned" telephone number, the U.S. District Court for the Eastern District of Missouri recently held that "[c]alls like the ones here, involving an attempt to confirm or refill a prescription order, schedule a prescription delivery, or confirm that a prescription is on its way, fall within the ambit of 'calls made necessary in any situation affecting the health and safety of consumers.'"  *Roberts v. Medco Health Sols., Inc.*, No. 4:15 CV 1368 CDP, 2016 U.S. Dist. LEXIS 97177, at *8 (E.D. Mo. July 26, 2016).  That case concerned five calls placed by defendants[8] regarding a family's prescriptions—specifically, calls informing the family that prescriptions needed to be refilled, were being delivered, or needed updated information.  *See id.*

---

[6] "The *Commission shall prescribe regulations* to implement the requirements of this subsection. In implementing the requirements of this subsection, *the Commission--*  . . .(C) *may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii)* of this subsection calls to a telephone number assigned to a cellular telephone service . . . ." 47 U.S.C. § 227(b)(2)(C) (emphasis added).  In Section 227(b)(2), Congress expressly (1) mandated that the FCC prescribe regulations to implement the subsection, and (2) gave the FCC the power to exempt certain prerecorded calls or calls made with an automatic telephone dialing system from the general prohibition on calls to a cellular telephone service.

[7] The FCC, moreover, has recognized that the emergency exception must be interpreted broadly.  *In re Matter of Tel. Consumer Prot. Act of* 1991, 7 F.C.C. Rcd. 2736 (1992) ("The legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly.").  In its 1992 Order, the FCC noted that among other things, "the term 'emergency purposes' is also intended to include any automated telephone call that notifies consumers of impending or current power outages, whether these outages are for scheduled maintenance, unscheduled outages caused by storms, or power interruptions for load management programs." *Id*. at 2738.  "In keeping with the legislative history and the intent of the TCPA, the Commission proposes to interpret 'emergency' to include situations in which it is in the public interest **to convey information to consumers concerning health or safety** . . . ."  *Id*. (emphasis added).  The FCC's pronouncements in its 1992 Order, and dismissal of this case, are consistent with the legislative history of the TCPA.  The TCPA was designed to address "the proliferation of intrusive, nuisance calls . . . from telemarketers" (Pub. Law 102-243, 105 Stat 2394, § 2(6)); to avoid discouraging the dissemination of health and safety information to consumers, Congress and the FCC exempted calls – such as these – made for emergency purposes that affect the health and safety of consumers.

[8] Defendants were "a pharmacy benefits manager [that] owns affiliated entities that operate mail-order pharmacies" and a "pharmacy that dispenses specialty medication."  *Id.* at n.1.

11

at *3-7. The Court concluded that the "plain language" of the emergency purposes exception applies to calls to confirm or refill a prescription because "in many instances a patient's ability to timely receive a prescribed medicine is critical in preventing a major health emergency." *Id.* at *8-9. The Court thus granted judgment in defendants' favor. *Id.* at *9-10. The same result is warranted here because Plaintiff has alleged an identical case. Plaintiff claims to be the current "registered account owner" of a cellular telephone number that belonged to someone else.[9] Complaint, ¶¶ 32-33. Plaintiff claims to have received six telephone calls, does not allege that she ever tried to stop the calls, and confirms that "they were prescription reminders." Complaint, ¶¶ 34-37. The calls are not actionable and the case must be dismissed with prejudice.

### B. Plaintiff's Second Cause of Action for Purported Violations of 47 U.S.C. § 227(c)(5) Fails to Allege a Claim Under the TCPA

In addition to her claim for alleged violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff alleges a second claim premised on alleged violations of 47 C.F.R § 64.1200(c)(2) and (d). Plaintiff's second claim fails for a variety of reasons: (1) Plaintiff fails to allege that she received calls as a "residential telephone subscriber"; (2) the alleged calls are not "telephone solicitations" nor were they made for "telemarketing purposes"; and (3) Plaintiff fails to allege that *she* registered the telephone number at issue on the national do-not-call registry."

### i. Plaintiff Fails to Allege That She Received Calls as a "Residential Telephone Subscriber"

To allege a claim premised on either 47 C.F.R § 64.1200(c)(2) or (d), Plaintiff must sufficiently allege that she received calls as a "residential telephone subscriber." Here, Plaintiff

---

[9] Plaintiff alleges that "as with Plaintiff, CVS places prerecorded calls to current subscribers of recycled cellular telephone numbers . . . ." Complaint, ¶ 17. Plaintiff further alleges that "cellular telephone subscribers deactivate and relinquish their cellular telephone numbers. Once deactivated, the cellular telephone carrier reassigns the number to another subscriber . . . . In some instances, the prior owner of a recycled telephone number may have consented to receiving prerecorded calls from CVS." Complaint, ¶¶ 18-19.

alleges that calls were made to a "cellular telephone number" (Complaint, ¶ 32) and includes no allegations indicating that she qualifies as a residential telephone subscriber or that the cellular telephone number was her residential line. Plaintiff has failed to plead any facts sufficient to draw that conclusion here, does not even include a rote recitation of the statutory language, and for that reason alone her claim must be dismissed. *See e.g.*, *Cunningham*, 2017 U.S. Dist. LEXIS 63223, at *28 (claim premised on 47 CFR 64.1200(c)(2) dismissed where plaintiff claimed a cellular phone number was at issue and pled no facts indicating the number was used for residential purposes); *see also Lee v. LoanDepot.com, LLC*, No. 14-CV-01084-EFM, 2016 U.S. Dist. LEXIS 110100, at *18 (D. Kan. Aug. 17, 2016) ("To prevail under 47 C.F.R. § 64.1200(c)(2), Plaintiff must establish that his cellular number is used for residential purposes.").

### ii. The Alleged Calls Were Not Telemarketing or Solicitations

The TCPA regulates telemarketing. *Leyse v. Clear Channel Broad., Inc.*, 697 F.3d 360, 364 (6th Cir. 2012). And its implementing regulations do not forbid all prerecorded calls – only those made for **telemarketing purposes**. 47 C.F.R. § 64.1200(d) ("No person or entity shall initiate any call for **telemarketing purposes** to a residential telephone subscriber. . . .") (emphasis added); 47 C.F.R. § 64.1200(c)(2) (making actionable certain calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive **telephone solicitations** . . . .") (emphasis added). Both "telemarketing" and "telephone solicitation" are defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ." 47 C.F.R. § 64.12000 (f)(12) and (14).

Prescription notification calls by their very nature are not initiated for the purpose of encouraging the purchase of goods or services; rather, such calls communicate health care-

13

related information and are neither "telephone solicitations" nor "telemarketing."[10]  Accordingly, flu shot reminder calls, which "are the same as [] 'wellness checkup' and 'prescription notification' calls," "are not telemarketing, solicitation, or advertising calls." *Jackson v. Safeway, Inc.*, No. 15-cv-04419-JSC, 2016 U.S. Dist. LEXIS 140763, *16-*19 (N.D. Cal. Oct. 11, 2016).  Because the calls were not made for telemarketing purposes, Plaintiff has not alleged a violation premised on either Section 64.1200(c)(2) or (d).

Additionally, Plaintiff – as the holder of a reassigned telephone number – cannot earnestly claim that CVS Health was trying to cause her to purchase someone else's prescription. To qualify as telemarketing or telephone solicitations, the calls must have been made "**for the purpose of encouraging the purchase** or rental of, or investment in, property, goods, or services . . . ."  47 C.F.R. § 64.12000 (f)(12) and (14) (emphasis added).  No one was trying to encourage Plaintiff to purchase someone else's prescription, Plaintiff cannot allege otherwise, and Plaintiff consequently fails to allege a claim for this reason as well.

### iii. Plaintiff Does Not Allege that She Registered Her Telephone Number on the Do-Not-Call List

To the extent Plaintiff's claim is premised on alleged violations of 47 C.F.R. § 64.1200(c)(2), the claim must be dismissed for an additional independent reason.  To allege a violation of Section 64.1200(c)(2), under the plain language of the regulation, Plaintiff must allege that she is a "**subscriber who has registered** his or her telephone number on the national do-not-call registry." *Id.* (emphasis added).  In her Complaint, Plaintiff fails to allege whether *she* affirmatively registered the telephone number at issue on the do-not-call registry for increased privacy protection.  Tellingly, Plaintiff can only allege that the "number has been

---

[10] *See* 47 U.S.C. § 227(a)(4) ("The term 'telephone solicitation' means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person . . . .").

registered." Complaint, ¶ 33. As such, Plaintiff's claim is fatally flawed because Plaintiff has not satisfied the plain language of the regulation. 47 C.F.R. § 64.1200(c)(2).

## VI.  IN THE ALTERNATIVE, THE CASE SHOULD BE STAYED

In the event this case is not dismissed, CVS Health respectfully urges the Court to stay the case. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Federal Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). To determine if a stay is appropriate, courts consider: "[1] the potentiality of another case having a dispositive effect . . ., [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration." *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (citing *Landis*, 299 U.S. at 255).

### A.  The FCC's Declaratory Ruling and *ACA Int'l* D.C. Circuit Appeal

On July 10, 2015, the FCC issued a Declaratory Ruling which altered what may qualify as an "Automatic Telephone Dialing System" ("ATDS") and the definition of a "called party" under the TCPA. Declaratory Ruling, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, ¶¶ 15-16, 72-73 (F.C.C. July 10, 2015) (CG Docket No. 02-278). Several petitioners have challenged the FCC's interpretation of these terms by way of an ongoing appeal in the D.C. Circuit – *ACA International v. Federal Communications Commission*, Case No. 15-1211. *See* Request for Judicial Notice ("RJN") and Juergens Decl., Ex. A, General Docket; Ex. B, Joint Brief for Petitioners; Ex. C, ACA International's Amended Petition for Review. As relevant here, the basis for the appeal is that the definition of an ATDS, as interpreted by the FCC, is overbroad, vague, and confusing.

Namely, the FCC ruled that the TCPA's use of the term "capacity" in the definition of "automatic telephone dialing system" does not exempt equipment that lacks the "present ability" to generate and dial numbers randomly or sequentially.  RJN and Juergens Decl., Ex. B, Joint Brief for Petitioners, Pgs. 4, 21-53; Ex. E, 2015 TCPA Order, ¶ 15.

The FCC also considered the issue of calls to reassigned telephone numbers and concluded that the statutory term "called party" included both the "subscriber" and a "customary user of a telephone number included in a family or business calling plan" belonging to the subscriber.  RJN and Juergens Decl., Ex. E, ¶ 73.  In settling on this definition, the FCC rejected a suggestion made by several commentators to define "called party" as the "intended" recipient of the phone call.  *Id.* ¶ 74.  Thus, the FCC explained that, subject to one limited exception, "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based."  *Id.* ¶ 73.  The FCC determined that a limited safe harbor should apply for "callers who make calls without knowledge of reassignment and with a reasonable basis to believe they have valid consent to make the call."  *Id.* ¶ 72.  Such callers "should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber."  *Id.*

Briefing and oral argument were completed on October 19, 2016.  *See* RJN and Juergens Decl., Ex. D (Courtroom Minutes of Oral Argument).  Who qualifies as a "called party" and what qualifies as an ATDS are central to this lawsuit – Plaintiff claims she did not provide consent because her telephone number is the reassigned number of a customer (Complaint, ¶¶

17-19[11]) and alleges that CVS Health used an "automatic telephone dialing system" to make the

calls (Complaint, ¶ 52).[12]  Because the D.C. Circuit's ruling may be dispositive of the case and

will at the very least draw the boundaries of discovery and issues to be litigated, the case should

be stayed.

### B.    Other Courts Have Granted Stays In Similar Circumstances

In the past two years, numerous federal courts, including in the Sixth Circuit, have

granted stays in light of the *ACA* appeal.[13]  These decisions confirm that a stay is appropriate

here.  By way of example, the court in *Fontes* reasoned that "it appears the FCC's ruling expands

the scope of liability in cases of reassigned phone numbers.  The FCC accepted a definition of

'called party' that includes the subscriber of a phone number, even where that person has

received a reassigned number. . . And, the FCC adopted a broader definition of 'automatic

telephone dialing system' that focuses on a device's *potential* capabilities, as opposed to a

narrow definition based on a device's *present* capabilities."  *Fontes,* 2015 U.S. Dist. LEXIS

169580, at *12.  A stay was appropriate because if the D.C. Circuit determines that the FCC

---

[11] Plaintiff is also trying to certify a class of "[a]ll persons in the United States who . . . Defendant [] called [] where such numbers had been recycled or reassigned."  Complaint, ¶ 43 ("Robocall No Consent Recycled Number Class").

[12] Plaintiff alleges that CVS "placed unsolicited calls to cellular telephone numbers . . . using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator . . . ."  Complaint, ¶ 52.  The TCPA defines the term "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

[13] *Tilley v. Ally Fin., Inc.*, No. 16-cv-14056, 2017 U.S. Dist. LEXIS 63022, at *2 (E.D. Mich. April 26, 2017) (granting motion to stay in part because of the pending *ACA International* decision); *Ricketts v. Consumers Energy Co.*, No. 16-cv-13208, 2017 U.S. Dist. LEXIS 82501, at *6-7 (E.D. Mich. May 31, 2017) (same); *Maksymowski v. Navient Solutions, Inc.*, No. 15-14368, 2017 U.S. Dist. LEXIS 4406, at *2-3 (E.D. Mich. Jan. 12, 2017) (same); *Jones v. Credit Acceptance Corp.*, No. 15-13165, 2016 U.S. Dist. LEXIS 174152, at *9-10 (E.D. Mich. Oct. 31, 2016) (same); *Delozier v. Nationstar Mortg., LLC*, No. 3-16-1433, 2016 U.S. Dist. LEXIS 183823, at *2 (M.D. Tenn. October 27, 2016) (same); *Fontes v. Time Warner Cable, Inc.*, No. CV14-2060-CAS (CWx), 2015 U.S. Dist. LEXIS 169580, at *16 (C.D. Cal. Dec. 17, 2015) (same); *Lucas Alex Ambrezewicz v. Leadpoint, Inc.*, No. 5:16-cv-02331-JGB-KK (C.D. Cal. May 8, 2017) (same).

reached the "wrong conclusion" in its declaratory ruling, this could "potentially be dispositive of the outcome in this case." *Id.* at *13.

Similarly, in *Maksymowski*, the court held that the decision in *ACA* may be dispositive and "will, at a minimum, provide guidance to the parties and the court regarding the definition of an autodialer under the TCPA." *Maksymowski*, 2017 U.S. Dist. LEXIS 4406, at *2. "A stay pending the D.C. Circuit's decision will serve to conserve the resources of the parties and the court while avoiding the wasted effort that may be involved in proceeding under an uncertain legal framework." *Id.* at *2-3. Further, the court recognized that a stay would be "relatively brief, ameliorating any prejudice to Plaintiff" given that the D.C. Circuit heard oral argument in October 2016. *Id.* at *3.

### C.  The Relevant Factors All Weigh in Favor of Granting a Stay Here

#### i.  *ACA* May be Dispositive

It is prudent to stay this case pending resolution of the D.C. Circuit's review of the 2015 TCPA Order because the proper interpretation of the TCPA remains unclear with respect to both the definitions of a "called party" and an ATDS. In its 2015 TCPA Order, the FCC accepted a definition of "called party" that includes the subscriber of a phone number, even where that person has received a reassigned number, with a limited safe harbor for first time calls. *See* RJN and Juergens Decl., Ex. E, 2015 TCPA Order, ¶ 72-74; ¶ 84. If the Court of Appeals decides to limit the scope of the term "called party" only to the intended recipient of the call, Plaintiff's allegations as to receiving calls on a reassigned number will have no merit because the alleged calls were made to an intended patient in need of a prescription refill. The FCC also adopted a broader definition of "automatic telephone dialing system" that focuses on a device's potential capabilities, as opposed to a definition based on a device's present capabilities; this too will

18

affect this case as a narrow definition may mean that the technology at issue does not qualify as an ATDS.  Plaintiff has placed both definitions at issue[14] and *ACA* may dispose of the case in its entirety and at the very least will shape discovery and issues to be litigated.

### ii.    A Stay Will Promote Judicial Economy and Public Welfare

Plaintiff wishes to certify two classes:  (1) the "Robocall No Consent Recycled Number Class," premised on violations of 47 U.S.C. § 227(b)(1)(A)(iii) (which requires that Plaintiff prove that an ATDS was used for making calls to a "called party") and (2) the "Do Not Call Registry Class," premised on 47 C.F.R. § 64.1200(c) and (d).  Complaint, ¶ 43.  In the event that this case is not stayed, Plaintiff will no doubt pursue discovery with respect to both causes of action and both classes that she is attempting to certify.  It makes no sense to move forward with this case and discovery as to both causes of action while a decision in a pending appeal (*ACA*), in which briefing and oral argument have been completed, that is expected to clarify the proper definition of an ATDS (an element of Plaintiff's Section 227(b)(1)(A)(iii) cause of action) and who constitutes a "called party" (a dispositive issue), may dispose of Plaintiff's case.  Judicial economy and public benefit weigh in favor of a stay.  *See Gill v. Convergent Outsourcing, Inc.*, No. 2:16-cv-01035, 2017 U.S. Dist. LEXIS 92286, at *7 (S.D. Ohio June 15, 2017) (citing *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11 Civ. 1608, 2012 U.S. Dist. LEXIS 96817, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012) ("[C]onsiderations of judicial economy are frequently viewed as relevant to the public interest[.]")).

### iii.    Plaintiff Will Not be Prejudiced by a Stay

This action is in its infancy and neither party has expended truly significant time or effort in its prosecution and defense.  A stay would not disrupt proceedings at this stage, but rather

---

[14] *See* Complaint, ¶¶ 9-14 (ATDS allegations), ¶¶ 15-30 ("called party" v. "intended party" allegations with reference to 2015 TCPA Order).

would serve as a brief and efficient undertaking in light of the dispositive issues to be decided by the D.C. Circuit.  CVS Health respectfully urges the Court to stay this case in the event it is not dismissed.

## VII.    CONCLUSION

This case must be dismissed because Plaintiff has named the wrong party and the Court lacks personal jurisdiction over CVS Health.  Alternatively, the case should be dismissed because Plaintiff premises her case on prescription reminders that are not actionable under the TCPA and fall within the "emergency purposes" exception.  Additionally, Plaintiff has failed to allege claims under 47 C.F.R. § 64.1200(c)(2) and (d) because she does not claim to be a "residential telephone subscriber," the alleged calls were not "telemarketing" or "telephone solicitations," and Plaintiff has not alleged that *she* registered her telephone number on the National Do-Not-Call Registry.  If this case is not dismissed outright, CVS Health respectfully requests that this Court stay the action until the D.C. Circuit appeal has been resolved.


 Respectfully submitted,


/s/ Julie L. Juergens
Julie L. Juergens (0066873)
GALLAGHER SHARP LLP
Sixth Floor, Bulkley Bldg.
1501 Euclid Avenue
Cleveland, Ohio 44115
Telephone: (216) 241-5310
Fax: (216) 241-1608
Email:  jjuergens@gallaghersharp.com

Counsel for Defendant
CVS HEALTH CORPORATION

Joshua Briones (CA 205293) *pro hac application forthcoming*
Esteban Morales (CA 273948) *pro hac application forthcoming*
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
2029 Century Park East, Suite 1370
Los Angeles, CA 90067
310-586-3200
310-586-3202
jbriones@mintz.com
emorales@mintz.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2017, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to all attorneys of record.

/s/ Julie Juergens
Julie Juergens

2